**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA**

v.                                CASE NO:   8:00-CR-442-T-27AEP

**GREGORY GIBSON**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court by referral from the Honorable James D. Whittemore for a Report and Recommendation, (*see* Dkt. No. 36), on Defendant, Gregory Gibson's ("Defendant") Motion to Dismiss Indictment on Constitutional Speedy Trial Grounds ("Motion"). (Dkt. No. 34.)   By his Motion, Defendant asserts that his constitutional speedy trial rights were violated, and the Indictment against him in this case should be dismissed under the Sixth Amendment of the United States Constitution and  Rules 12(b)(2) and 48(b)(3) of the Federal Rules of Criminal Procedure.  In response, the Government asserts that Defendant's constitutional speedy trial rights were not violated because the delay in Defendant's arrest was Defendant's fault, and Defendant failed to show that he suffered actual prejudice from the delay.   To address this matter, the undersigned held an evidentiary hearing on December 7, 2015.  Based upon the parties' arguments, the evidence, and the entire record, I find that Defendant's speedy trial rights were not violated, and, therefore, I recommend that Defendant's Motion be denied.

      I.      Procedural History and Factual Background

On December 6, 2000, a two-count Indictment was returned against Defendant for one count of making a false statement in an application for a United States passport, in violation of 18

1

U.S.C. § 1542, and one count of perjury, in violation of 18 U.S.C. § 1621. (Dkt. No. 1.) On that same date, a warrant was issued authorizing Defendant's arrest on those charges. (Dkt. No. 2.) According to the Indictment, the charged offenses allegedly were committed by Defendant "in or about March 29, 2000." (Dkt. No. 1.) Almost fifteen years later, on September 15, 2015, Defendant was arrested on the warrant issued in this case. (*See* Dkt. No. 12.) On September 16, 2015, Defendant presented for his initial appearance before United States Magistrate Judge Carol Mirando in this Court's Fort Myers Division, and Defendant was temporarily detained and subsequently transported to the Tampa Division. (*See* Dkt. No. 8.) Soon thereafter, on September 22, 2015, Defendant appeared before United States Magistrate Judge Julie Sneed and entered a plea of not guilty. (Dkt. No. 14.) On October 8, 2015, a status conference was held, during which the Government announced its intent to file a Superseding Indictment and that discovery was not yet produced to the defense. (Dkt. No. 22.) The Court noted that, upon filing a written motion and a signed speedy trial waiver, the Court would continue the trial from the November 2015 trial term to the December 2015 trial term. (*Id.*) On October 20 and 21, 2015, Defendant filed a Waiver of Right to Speedy Trial (Dkt. No. 27) and an Unopposed Motion to Continue Trial (Dkt. No. 28). The Court, on October 22, 2015, granted the motion to continue the trial. (*See* Dkt. No. 29.) Subsequently, on October 29, 2015, Defendant filed a Notice of Assertion of His Sixth Amendment U.S. Constitutional Right to a Speedy Trial and/or Denial Thereof (Dkt. No. 32) and, four days later, on November 2, 2015, filed the instant Motion (Dkt. No. 34) requesting that the Indictment be dismissed on speedy trial grounds.[1] To develop the factual record detailing the

---

[1] The parties have not addressed the significance, if any, of Defendant's October 21, 2015 Waiver of Right to Speedy Trial (Dkt. No. 27). However, Defendant asserts that discovery in this case was not received until October 20, 2015, and that Defendant's attorney needed additional time to review the discovery with Defendant to investigate the circumstances and the law surrounding this case. (*See* Dkt. No. 32 at 2.) And, upon having an opportunity to review the discovery provided

approximate fifteen-year gap between the issuance of the arrest warrant and Defendant's arrest on the warrant, the undersigned conducted an evidentiary hearing on December 7, 2015, at which Defendant called two witnesses, Marco Fernandez ("Agent Fernandez") and Ryan Brankin ("Agent Brankin"), who are both special agents with the U.S. Department of State, Diplomatic Security Service ("DSS"). (*See* Dkt. No. 48.)

Agent Fernandez testified that he is the current case agent assigned to Defendant's case. Agent Fernandez further explained that he was assigned to the case in October 2015, after Defendant was arrested on the outstanding warrant in this case. Agent Fernandez noted that, prior to Defendant's arrest, he had no involvement in Defendant's case. Although he had no involvement with the case prior to Defendant's arrest, Agent Fernandez detailed some events that led to the charges. Specifically, he explained that on March 29, 2000, an individual submitted a passport application in the name of William Jay Woolston at the County Courthouse in Clearwater, Florida. *See* Govt. Hearing Ex. No. 1 (depicting photograph submitted with the passport application). Included with the passport application was the birth certificate for William Jay Woolston and a Florida driver's license in the name of William Jay Woolston, which was issued on March 22, 2000, just seven days before the passport application. *See* Govt. Hearing Ex. No. 2. The address listed on both the driver's license and the passport application for William Jay Woolston is 10 Bel Forest Drive, Belleair Bluffs, Florida 33770. *See* Govt. Hearing Ex. Nos. 1 & 2. Agent Fernandez stated that the passport application was identified as a possible fraudulent

---

by the Government in this case, as well the applicable law, Defendant found it appropriate and necessary to file a notice of "his assertion of his right to a speedy trial and/or the denial of that right by Government under the Sixth Amendment of the United States Constitution as the Government has not timely prosecuted/brought him to trial." (*Id.*)  Given the undersigned's recommendation that Defendant's motion be denied on other grounds, the significance, if any, of the October 21st speedy trial waiver will not be addressed.

application, and thus a case agent, Special Agent Martin O'Toole ("Agent O'Toole"), was assigned to investigate the matter.

Agent Fernandez detailed that Agent O'Toole attempted to contact the individual who applied for the passport at the 10 Bel Forest Drive address listed on the driver's license and passport application. Agent Fernandez noted that, based upon information gathered during the early stages of the investigation, Agent O'Toole identified the individual who applied for the William Jay Woolston passport as Gregory Gibson. During his testimony, Agent Fernandez identified a Florida driver's license for Gregory James Gibson that was issued on March 18, 1999, *see* Govt. Hearing Ex. No. 3, and opined that Defendant is the person pictured in the photographs for the Gregory James Gibson driver's license, the William Jay Woolston driver's license, and the William Jay Woolston passport application. *Cf.* Govt. Hearing Ex. Nos. 1, 2, & 3. Based upon the information gathered by Agent O'Toole, the charges in this case were brought against Gregory Gibson, also known as William Jay Woolston, and a warrant for arrest was issued. Agent Fernandez stated that the warrant was placed into the National Crime Information Center ("NCIC") under both names, Gregory Gibson and William Jay Woolston.

Notably, because Agent Fernandez had no involvement with the case prior to Defendant's arrest, Agent Fernandez could not detail with firsthand knowledge what, if any, efforts were implemented to locate Defendant during the interim time period between the issuance of the arrest warrant and Defendant's September 2015 arrest. Agent Fernandez stated, however, that it is his agency's policy to run open warrants annually through NCIC, but that such action was not documented in this case.

Agent Brankin testified that, starting in April 2015, he was tasked in the Miami Field Office with the collateral duty to investigate the open fugitive cases in that office. Agent Brankin stated

that he was assigned between fifty and sixty fugitive cases, including the instant case. However, Agent Brankin did not begin his investigation into this case until approximately August or September 2015, because he was detailed to other responsibilities outside the Miami office for many reasons during the interim period. Agent Brankin explained that his agency maintains a database for fugitive cases, which maintains information about each case, including any statute of limitations issues, any investigative leads, and any prior steps taken.

Significantly, Agent Brankin discovered that in February 2015, an analyst in his office, as part of a larger separate investigation, conducted a facial recognition check utilizing a software program known as Faces, during which the photographs associated with the Gregory Gibson driver's license and William Jay Woolston passport application were matched with a photograph associated with a Florida driver's license in the name of Anthony Wayne Morrison Lazzara, with a listed address of 13297 Lazzaro Court, Estero, Florida 33928. *See* Govt. Hearing Ex. No. 4 at 1 (depicting match with Gregory Gibson driver's license photograph) & 2 (depicting match with William Jay Woolston passport application photograph). Because the investigative significance of the address on the Anthony Wayne Morrison Lazzara driver's license had not been previously determined, Agent Brankin stated that he traveled to the Estero residence on September 16, 2015, to investigate it further. Upon his arrival at the residence, Agent Brankin explained that he located Defendant outside the residence and arrested Defendant on the outstanding warrant in this case.

Agent Brankin detailed that, upon his arrest, during a *post-Miranda* interview, Defendant acknowledged that his legal identity upon the day of his arrest was Anthony Wayne Morrison Lazzara, and that he had legally changed his identity from Wayne Douglas Shevi to Anthony Wayne Morrison. *See* Govt. Hearing Ex. 5 at 1 (depicting Anthony Wayne Morrison Lazzara driver's license), 2 (depicting a Minnesota driver's license in the name of Wayne Douglas Shevi),

5 (depicting a U.S. passport in the name of Wayne Douglas Shevi), and 9 (depicting Minnesota state court order granting a name change from Wayne Douglas Shevi to Anthony Wayne Morrison Lazzara). Agent Fernandez also detailed statements made by Defendant during his post-*Miranda* interview. Significantly, Agent Fernandez stated that Defendant admitted that he applied for the William Jay Woolston passport in March 2000 because he was looking to assume the fraudulent identity of William Jay Woolston to evade law enforcement action by the Internal Revenue Service ("IRS"), and, prior to March 2000, he had already assumed the fraudulent identity of Gregory Gibson to avoid detection by IRS investigators.

After Defendant's arrest, Agent Brankin explained that Defendant's fingerprints were run in NCIC and that, after doing so, Defendant's fingerprints revealed a match with the identity of Wayne Douglas Shevchuk. The NCIC report associated with Wayne Douglas Shevchuk admitted in the record identified several aliases, including: Gregory Gibson, William Jay Woolston, Anthony Wayne Morrison Lazzara, Wayne Shevchuck, Wayne D. Shevi, Wayne Douglas Schevchuk, and Wayne Douglas Shevi. *See* Def. Hearing Ex. No. 3 at 2. The Wayne Douglas Shevchuk NCIC report also reflects that Defendant, under the name Wayne Douglas Shevi, was convicted of tax fraud and sentenced to imprisonment for forty-two months. *See* Def. Hearing Ex. No. 3 at 13. Notably, Defendant was incarcerated in federal prison under the name Wayne Douglas Shevi during a period of time that Defendant was wanted in this case. *See* Def. Hearing Ex. No. 4 (reflecting that Defendant's release date was on November 12, 2004.) However, as explained by Agent Brankin, the Gregory Gibson, William Jay Woolston, and Anthony Wayne Morrison Lazzara aliases were only added to the NCIC report associated with Wayne Douglas Shevchuk and Wayne Douglas Shevi by his agency after Defendant's arrest in this case. In other words, as explained by Agent Brankin, there was no connection between Wayne Douglas Shevchuk or

6

Wayne Douglas Shevi and the aliases of Gregory Gibson, William Jay Woolston, and Anthony Wayne Morrison Lazzara until Defendant's arrest in this case.

II.   Analysis

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to speedy and public trial . . . ." U.S. Const. amend. VI. "This right 'is as fundamental as any of the rights secured by the Sixth Amendment.'" *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (quoting *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967)). Because of the unique policies underlying this right, a court must set aside any judgment of conviction, vacate any sentence imposed, and dismiss the indictment if it finds a violation of the defendant's right to a speedy trial. *Villarreal*, 613 F.3d at 1349. In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court articulated a four-part test for determining whether a constitutional speedy trial violation had occurred. Specifically, a court must examine:

> 1) the length of the delay;
> 
> 2) the reason for the delay, *i.e.* whether the government or the defendant was more to blame for the delay;
> 
> 3) whether the defendant timely asserted his right to a speedy trial; and
> 
> 4) whether the defendant suffered actual prejudice as a result of the delay.

*Id.* at 530; *see also United States v. Dunn,* 345 F.3d 1285, 1296 (11th Cir. 2003) and *United States v. Clark*, 83 F.3d 1350, 1351 (11th Cir. 1996). The first part of the *Barker* test, involves an inquiry into the length of the delay between the indictment and the arrest and must be "presumptively prejudicial" to trigger an inquiry into the other three considerations. *Clark*, 83 F.3d at 1351. A delay of one year is considered presumptively prejudicial. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). However, the length of delay alone does not determine a speedy trial

violation. The Supreme Court has held that while excessive delay "presumptively compromises the reliability of a trial . . . such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Id.* at 655-56. Rather, "it is part of the mix of relevant facts, and its importance increases with the length of the delay." *Id* at 656. The length of the delay itself weighs against the government, incrementally increasing in weight as the delay becomes increasingly protracted, and a particularly lengthy delay may also affect the analysis of the fourth *Barker* factor. *Villarreal*, 613 F.3d at 1350 (citing *United States v. Smith*, 94 F.3d 204, 209 (6th Cir. 1996) (asserting that if the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors and may, in extreme circumstances, give rise to a strong presumption of evidentiary prejudice affecting the fourth *Barker* factor)). Importantly, where the first three parts of the *Barker* test weigh heavily against the government, the defendant bears no burden to demonstrate the fourth part of the *Barker* test, meaning the defendant need not show actual prejudice by the delay. *United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991). In other words, "a defendant must generally show actual prejudice unless the first three [parts of the *Barker* test] . . . all weigh heavily against the government." *Dunn*, 345 F.3d at 1296.

Here, Defendant asserts that the government failed to afford him his Constitutional right to a speedy trial and thus requests that the Court dismiss the pending indictment. (Dkt. No. 34 at 4-5.) Defendant's "position is that the first three *Barker* factors all weigh heavily against the Government and, therefore, he does not have to show prejudice." (Dkt. No. 34 at 13.) In response, the Government concedes that the fourteen years and nine months between Defendant's indictment date and his arrest date create a presumption of prejudice, but the Government argues that Defendant's motion is unwarranted because the second *Barker* factor does not weigh heavily against the Government, since the reasons for the delay between the indictment and Defendant's

arrest is due to Defendant's own conduct.[2] (Dkt. No. 40 at 5-7.) As framed by the parties, therefore, the issue is: what were the reasons for the delay between the indictment and Defendant's arrest, and do these reasons weigh heavily against the Government? If the reasons for the delay rest primarily with the Government, then dismissal would be warranted, but if the reasons do not weigh heavily against the Government, Defendant's motion must fail given that Defendant has not attempted to demonstrate any prejudice.

The Government bears the burden of establishing valid reasons for the delay. *See United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) (holding that "the burden is on the prosecution to explain the cause of the pre-trial delay") (citations omitted). A government's inability to arrest or try a defendant because of the defendant's own evasive tactics constitutes a valid reason for delay. *See Villarreal*, 613 F.3d at 1351 (citing *Ingram*, 446 F.3d at 1337 (stating that "a defendant who intentionally evades the Government's efforts to bring him to trial is culpable in causing the delay")).

In this instance, the record is mostly silent about what efforts the Government performed to locate Defendant after the return of the indictment. Agent Fernandez stated that it is his agency's policy to run open warrants annually through NCIC, but such action was not documented in this case. However, despite the record's silence on the scope of the Government's efforts to locate Defendant, the undersigned finds that the reason for the delay in Defendant's arrest is overwhelmingly due to Defendant's intentional acts to conceal his true identity to evade detection

---

[2] The Government asserts that the third part of the *Barker* test is "neutral," but, as noted previously, the Government does not address the significance, if any, of Defendant's October 21, 2015 Waiver of Right to Speedy Trial (Dkt. No. 27), which was filed prior to his assertion of his right to speedy trial. (*See* Dkt. No. 40 at 7.)

9

by IRS investigative agents. Defendant's efforts in March 2000 to conceal his true identity[3] constitute the predominant reason for the delay of his arrest in this case. As corroborated by Agent O'Toole's investigation and Defendant's post-*Miranda* statement, in March 2000 Defendant was using the fraudulent identity of Gregory Gibson to evade law enforcement action. To enhance his efforts to evade investigative action by the IRS, on March 29, 2000, Defendant decided to obtain a second fraudulent identity under the name of William Jay Woolston when he applied for the passport. Although Defendant took substantial intentional steps to conceal his identity and avoid the force of the IRS, those steps apparently failed him given that Defendant was eventually convicted and sentenced for tax fraud under the name of Wayne Douglas Shevi. Further, though Defendant's conduct in March 2000 was not intended to avoid arrest in this case,[4] his March 2000 conduct is the direct cause for the delay of his arrest.

      The undersigned is satisfied there is little, if any, blame on the Government for the delay in Defendant's arrest. Given that Defendant was indicted under the name of Gregory Gibson, it would not have mattered what efforts law enforcement made during the interim period prior to Defendant's arrest to pursue Gregory Gibson because such pursuit would have been meaningless. Because there was no connection between the Wayne Douglas Shevchuk, Wayne Douglas Shevi, and Gregory Gibson identities prior to Defendant's arrest in this case, the fact that Defendant served time in federal prison while a fugitive in this case is of no consequence. Simply stated, by

---

[3] Significantly, what is not clear to the undersigned is what Defendant's legal identity was in March 2000. The undersigned *presumes* that Defendant's legal identity in March 2000 was Wayne Douglas Shevchuk. Given that Defendant is someone who, at some point in time, used the Wayne Douglas Shevchuk, Wayne Douglas Shevi, and Gregory Gibson identities; attempted to use the William Jay Woolston identity; and is now legally recognized as Anthony Wayne Morrison Lazzara, such a presumption is precarious at best.

[4] In fact, nothing in the record established whether or not Defendant knew about the pending charges in this case.

using the fraudulent identity of Gregory Gibson in March 2000, Defendant accomplished what he had hoped for, he avoided law enforcement detection; except it was not the IRS he avoided, it was the DDS.  The only way Defendant was eventually identified in this case was based upon a match of the photographs associated with the Gregory Gibson driver's license and the William Jay Woolston passport application with the photograph associated with Defendant's Florida driver's license in the name of Anthony Wayne Morrison Lazzara.  Defense counsel argues that, since Anthony Wayne Morrison Lazzara driver's license was issued in December 2013, the reason for the delay in this case is overwhelmingly due to the Government's failure to have a facial recognition match sooner.  Although it is plausible that the Government could have obtained a facial recognition sooner as defense counsel suggests, that is still simply not the predominate reason for the delay in Defendant's arrest.  Rather, the delay in this case was overwhelmingly caused by the Defendant's efforts to conceal his true identity.

Given that the second part of the *Barker* test does not weigh heavily against the Government, it is incumbent upon Defendant to establish actual prejudice resulting from the delay.  As noted, however, Defendant has not argued in any way that actual prejudice exists.  Further, it is difficult to conclude that any actual prejudice would exist, given that the evidence in this case is likely all documentary and photographic.  For these reasons, I find that Defendant's conduct to conceal his true identity in March 2000 overwhelmingly resulted in the delay of his arrest in this case, there is no actual prejudice to Defendant based upon the delay in his arrest, and thus Defendant's Motion is without merit.

III.    Conclusion

Based on the record and arguments of the parties, Defendant's assertion of a Sixth Amendment speedy trial violation must fail. Accordingly, it is **RECOMMENDED** that Defendant's Motion to Dismiss Indictment on Constitutional Speedy Trial Grounds (Dkt. No. 34) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 13th day of January, 2016.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Hon. James D. Whittemore
Counsel of Record