# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                      **Case No. 8:00-cr-442-T-27AEP**

**GREGORY GIBSON**

_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge, who recommends that Defendant's Motion to Dismiss Indictment on Constitutional Speedy Trial Grounds be denied (Dkt. 53).[1] Defendant has filed Objections to the Report and Recommendation.(Dkt. 57). A *de novo* review has been conducted, including a review of the transcript of the evidentiary hearing conducted by the Magistrate Judge. Upon consideration, Defendant's objections are overruled. The Report and Recommendation is accepted and approved in all respects. Defendant's Motion to Dismiss (Dkt. 34) is DENIED.

Dismissal based on a claim that a defendant's constitutional right to a speedy trial has been violated is an extraordinary remedy. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010). A balancing test involving four factors is employed in determining whether a delay in a defendant's trial constitutes a violation of his constitutional right to a speedy trial, including: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice borne by the defendant. *Barker v. Wingo*, 407 U.S. 514 (1972);

---

[1] Defendant makes only a Sixth Amendment, as opposed to a due process argument. To establish a Fifth Amendment due process violation, "a defendant bears the heavy burden of establishing (1) she suffered "actual prejudice" from the pre-accusation delay, and (2) that the delay was a result of a deliberate design by the Government to gain a tactical advantage." *United States v. Thomas*, supra at 1339; *United States v. Lequire*, 943 F.2d 1554, 1560 (11th Cir. 1991). Nothing in the facts supports a due process argument.

*United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). Where, as here, the delay is presumptively prejudicial, the Government has the burden of explaining the reason for the delay. *Villarreal*, 613 F.3d at 1351. Relevant here, the Government's inability to arrest a defendant because of his evasive tactics is a valid reason for delay, "[b]ut the government's failure to pursue a defendant diligently will weigh against it, more or less heavily depending on if the government acted in good or bad faith." *Id.* Here, Defendant does not contend that the Government acted intentionally or in bad faith.

The Magistrate Judge applied the four factor test from *Barker v. Wingo* in determining that Defendant was not deprived of his Sixth Amendment right to a speedy trial. He found that the "delay in Defendant's arrest was Defendant's fault, and Defendant failed to show that he suffered actual prejudice from the delay." Specifically, he found that "Defendant's efforts in March 2000 to conceal his true identity constitute the predominant reason for the delay of his arrest int his case." The record supports the Magistrate Judge's finding that Defendant's use of the several aliases to conceal his true identity and evade detection is the reason for the delay in his apprehension.

Defendant was indicted on December 6, 2000 for making a false statement in a passport application and perjury. Almost 15 years later, he was arrested. The delay between Defendant's indictment and his arrest is, as the Government concedes and the Magistrate found, presumptively prejudicial, and therefore an inquiry into the remaining three factors was necessary. *Ringstaff v. Howard*, 885 F.2d 1542 (11th Cir. 1989), *cert. denied*, 496 U.S. 927 (1990). The focus, therefore, is on the reason for the delay. *Id.* at 1543. In addressing the reason for the delay, the Magistrate Judge found that "the Defendant's conduct significantly contributed to the delay in locating him." A review of the evidentiary hearing testimony bears this out.

As the Government accurately argued in response to Defendant's motion:

> The defendant caused the majority of the delay by using at least three different aliases during the more than 14 year delay; by obtaining identification documents in all three aliases and by actively concealing his true identity through the use of all three aliases.

(Dkt. 40, p. 6).

On March 18, 2000, Defendant obtained a Florida Driver's License in the false name of GREGORY GIBSON. On March 22, 2000, just seven days before submitting the false passport application for which he was indicted, Defendant obtained a Florida driver's license in the name of WILLIAM JAY WOOLSTON. On March 29, 2000, he applied for a passport in that name, submitting a false birth certificate in support. After the application was flagged as fraudulent, Special Agent Martin O'Toole identified the individual who applied for the WOOLSTON passport as GREGORY GIBSON, and attempted to locate that individual at the address on the WOOLSTON driver's license, but, as would be expected, to no avail.

After the indictment was returned, an arrest warrant was placed in the NCIC data base. Thereafter, the agents checked the NCIC data base at least once per year. Their investigation located the true Gregory Gibson in Oregon in 2004-05. It had also been determined that the true William Jay Woolston was deceased. Other than those two fictitious names, the agents had nothing more than a picture of the subject on the fraudulent driver's licenses.

In February 2015, an analyst conducted a facial recognition check and associated the photographs on the Gibson driver's license and Woolston passport application with a photograph on a Florida driver's license in the name of Anthony Wayne Morrison Lazzara. Defendant was arrested at the address on the Lazzara driver's license.

Defendant's fingerprints revealed a match with WAYNE DOUGLAS SHEVCHUK. The NCIC report for that name identified several aliases, including GREGORY GIBSON, WILLIAM JAY WOOLSTON, ANTHONY WAYNE MORRISON LAZZARA, WAYNE SHEVCHUCK,

WAYNE D. SHEVI, WAYNE DOUGLAS SCHVCHUCK AND WAYNE DOUGLAS SHEVI. It also revealed that Defendant had served a 42 month federal sentence under the name WAYNE DOUGLAS SHEVI, and was released on November 12, 2004. Significantly, however, there was no information available to the agents until he was arrested which connected the name Gregory Gibson with the names Shevi or Shevchuk.

Defendant objects that the Report and Recommendation "omits" that law enforcement "took no action to try to locate 'Gregory Gibson'" after the false passport application was submitted. Contrary to this contention, the Magistrate Judge found that after the passport application was flagged as fraudulent, Special Agent O'Toole unsuccessfully attempted to locate William Jay Woolston at the address in Belleair Bluffs, Florida, and determined that Woolston was deceased. And the Magistrate noted that the agent identified the individual who applied for the Woolston passport as GREGORY GIBSON. While the Magistrate Judge acknowledged that the record was "mostly silent about what efforts the agents took to locate Defendant after the return of the indictment," he found that in 2004-05, they located the true Gregory Gibson in Oregon, and eliminated him as a suspect. The agents did, therefore, attempt to locate "Gregory Gibson."

By virtue of his use of aliases and false identifications, Defendant was essentially a fugitive, whose fugitivity cannot be ignored in analyzing the efforts of the agent. *See United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006)(*quoting Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)) (court "need not ignore a defendant's fugitivity in considering whether there has been a violation of his Sixth Amendment right to a speedy trial"). The Government acknowledges that it must exercise due diligence in attempting to locate and apprehend a defendant, "even if he is a fugitive fleeing prosecution." *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988). But where, as here, a defendant uses aliases and fraudulently obtained driver's licenses to support those aliases to conceal his true identity

for the purpose of evading apprehension, that weighs heavily against him in the balancing test. *See United States v. James*, 183 Fed. App'x 923, 927 (11th Cir.), *cert. denied*, 549 U.S. 1231 (2007) (because of defendant's use of aliases and state identifications to support those aliases, and his knowledge that he was wanted, "he shouldered the majority of the responsibility for the delay in his capture").

Finally, while there is no evidence that Defendant actually knew that he had been indicted, he concedes that he applied for the Woolston passport to evade the IRS and that prior to March 2000, he was using the "fraudulent identity of Gregory Gibson to avoid detection by the IRS." By using fraudulent driver's licenses and aliases, Defendant thwarted law enforcement's efforts to locate him and is therefore responsible for the nearly 15 year delay he now complains of, notwithstanding that he may not have known that he had been indicted. While a defendant has no duty to bring himself to trial, a defendant who successfully evades apprehension by law enforcement by concealing his identity through use of fraudulent aliases should not be heard to complain that the Government is responsible for the delay in his apprehension.

It was Defendant's efforts which effectively thwarted his apprehension by the agents through use of traditional investigative tools such as the NCIC and its fingerprint database. As the Government argues, all that the agents had was his picture. And the case agent explained that they did not have access to facial recognition technology because of privacy concerns.[2] Even if facial recognition technology had been available to the agents earlier than it was actually used in this case, for which there is no evidence, that demonstrates, at best, only slight negligence on the part of the Government.

---

[2] Facial recognition was not available to run on passport applicants due to "legal issues regarding privacy," as persons applying to passports are presumed to be United States citizens.

Defendant's contention that the Government should have conducted a records check on a "fraudulent" name is simply disingenuous. Even if the agents could have done more to apprehend Defendant, such as investigating the address on South Orange Blossom Trial in Orlando, considering his successful efforts to avoid apprehension by the IRS during the time frame immediately following the commission of the offense with which he is charged, those efforts outweigh any possible negligence on the part of the agents.

While it is true that the longer the delay, the stronger the presumption that a defendant has been prejudiced, presumptive prejudice "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett v. United States*, 505 U.S. 647, 656 (1992) (citation omitted). It simply remains a "part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* Where, as here, the agents were diligent, and Defendant makes no showing of prejudice, there is no speedy trial violation, regardless of the length of the delay. *Id.* ("Thus, in this case, if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense.").

In sum, although the length of the delay is strongly presumed to have prejudiced Defendant, the reason for the delay falls squarely on his shoulders. As the Magistrate Judge correctly concluded, notwithstanding the nearly 15 year delay, the first three *Barker v. Wingo* factors do not uniformly weigh heavily against the Government, and he was therefore required to show actual prejudice resulting from the delay, which he has not done. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th

Cir. 2003).[3]

Accordingly, Defendant's Motion to Dismiss (Dkt. 34) is DENIED.

**DONE AND ORDERED** this 3ʳᵈ day of March, 2016.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[3] Although Defendant's initial appearance was on September 16, 2015, he did not assert his speedy trial right until a month later, on October 29, 2015 (Dkt. 32). Prior to that, however, he waived his constitutional right to a speedy trial and moved to continue the trial (Dkts. 27, 28). While the parties did not, as the Magistrate noted, address the significance of that waiver, that has some bearing on the weight to be accorded his assertion of his right to a speedy trial.